## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CHESTER O'QUINN,**

**Petitioner,**

**vs.**                                                    **Civil No.  12-cv-746-DRH-CJP**

**MICHAEL ATCHISON,**

**Respondent.**

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

In April, 2001, a jury in Madison County, Illinois, convicted Chester O'Quinn of first degree murder.  He filed a petition for habeas relief pursuant to 28 U.S.C. §2254 (Doc. 1), raising the following grounds:

1. His speedy trial rights were violated and trial counsel was ineffective in repeatedly moving to continue the trial date.

2. The trial court erred in dismissing his postconviction petition without a hearing because he made a substantial showing that he was denied an impartial jury.

3. The state presented perjured testimony to the grand jury, i.e., Officer Wheeler's testimony that O'Quinn had been read his *Miranda* rights.

4. He was not read his *Miranda* rights.

5. The trial court erred in failing to address the claim of actual innocence raised in petitioner's *pro se* supplemental postconviction petition.

6. The Appellate Court refused to permit him to file a *pro se* supplemental brief in his appeal from the denial of his postconviction petition.

7. Trial counsel was ineffective in rushing to present a motion to reduce his sentence on the day of sentencing.  Counsel failed to challenge the

state's constructive amendment of the indictment by its instructions, the state's use of a non-IPI instruction, and the validity of the amended indictment.

8.   Counsel on direct appeal was ineffective in failing to raise the use of perjured testimony in the grand jury and the violation of his *Miranda* rights, and in failing to properly argue the speedy trial violation. The Appellate Court erred in not permitting him to raise these issues in a *pro se* supplemental brief.

9.   His postconviction petition counsel was ineffective in that he failed to communicate with petitioner, did not file an amended petition, and failed to conduct any investigation. In particular, counsel did not try to locate the doctor who treated petitioner for a wrist injury.

10.  His postconviction appellate counsel was ineffective in that he failed to raise the ineffectiveness of postconviction petition counsel and failed to raise the violation of petitioner's rights under the Fifth, Sixth and Eighth Amendments, violation of his *Miranda* rights, and use of perjured testimony before the grand jury. Further, counsel did not communicate with petitioner.

11.  His due process rights were violated by the submission of a special interrogatory which asked the jury to find the victim's age.

### Relevant Facts

This summary of the facts is derived from the detailed description by the Illinois Appellate Court, Fifth District, in its order affirming petitioner's conviction on direct appeal, *People v. O'Quinn*, 791 N.E.2d 1066 (Ill. App., 5th Dist. 2003). The state court's factual findings are presumed to be correct unless rebutted by clear and convincing evidence, which petitioner has not done. 28 U.S.C. §2254(e).

Petitioner was convicted of killing Emmarld Bradley, who was thirteen months old when she died.

In August, 1997, Twuna Jackson and her two children moved into an apartment with petitioner O'Quinn in Wood River, Illinois. Ms. Jackson had two

daughters, three-year-old Kiera and baby Emmarld.  O'Quinn was not the father of Ms. Jackson's children.

According to her pediatrician's records, Emmarld was healthy and thriving prior to August, 1997.  At her last visit on July 29, 1997, she had no marks, bruises or burns on her body.

Twuna Jackson's mother, Roxanne Harvey, came from Texas to watch the two girls while their mother was moving.  According to Ms. Harvey, Emmarld did not have any marks, bruises or burns.  However, when Ms. Harvey came back for a visit from October 24 to 26, 1997, Emmarld was thinner and her eyes were dark and sunken.  There were bruises on her cheeks and a faint bruise on her forehead.

On October 27, 1997, Ms. Jackson left for work at 4:00 p.m., leaving petitioner to care for her two daughters and his seven year old son, Adontay.  Before she left, she checked on Emmarld, who was in her bed.  The baby opened her eyes when Ms. Jackson kissed her, and then closed her eyes and went back to sleep.  According to Ms. Jackson, Emmarld's forehead was not bruised and there were no marks on her neck.

Responding to a 9-1-1 call, Wood River Police Officer Otis Steward arrived at petitioner's apartment at 5:00 p.m. on the same day.   He found Emmarld lying on a bed.   Her forehead was bruised, a purplish knot was forming on her forehead, and her breathing was labored.

Emmarld was taken by ambulance to Wood River Township Hospital. She was unresponsive to touch, light and pain. At 6:46 p.m., she was taken by helicopter to Cardinal Glennon Children's Hospital in St. Louis, Missouri, where she was seen by Dr. Scalzo. Dr. Scalzo is board certified in pediatrics and pediatric emergency medicine. He observed extensive bruising on her forehead. A CT scan showed bleeding in the front part of the brain, close to the forehead bruises, and a subarachnoid hemorrhage in the center of the brain. Emmarld was brain dead. Dr. Scalzo testified that "the condition was caused by multiple nonaccidental shearing forces consistent with shaken infant syndrome." Further, it was his opinion that "the bruising to the forehead and the hemorrhages on the brain were fresh, and he stated, 'A child with this extent of injury would go unconscious probably instantaneously or [within] minutes at the very most.'" *O'Quinn*, 791 N.E. 2d at 1070.

Emmarld was pronounced dead at about 11:30 a.m. on October 28, 1997. Dr. Monteleone, a professor of pediatrics at Saint Louis University School of Medicine and the Director of the Division of Child Protection at Cardinal Glennon, examined her about 30 minutes later. He testified that "the linear mark across Emmarld's neck was consistent with pulling and twisting the neck of a child's clothing and that the marks on her left arm appeared to be a pattern of a healing burn that had been inflicted intentionally." He determined that the cause of death was "severe child abuse consistent with shaken baby syndrome with impact." Dr.

Monteleone testified that Emmarld "would have been incapacitated within minutes of her injury." *O'Quinn*, 791 N.E. 2d at 1070-1071.

The doctor who performed the autopsy testified that "Emmarld died from a closed head injury caused by vigorous shaking of the head, which is clinically referred to as shaken baby syndrome. This was consistent with the retinal hemorrhages, which she observed grossly and through a microscopic examination." *O'Quinn*, 791 N.E. 2d at 1071.

At some point, Officer Steward spoke with petitioner at the hospital. According to Officer Steward, petitioner made the following statement:

> [H]e woke up Emmarld. He held her hand and walked with her into the kitchen, where she fell and lay on the floor. He went into the other room to get Adontay and Kiera for supper. When he walked back into the kitchen, Emmarld was still lying facedown on the kitchen floor, and he thought she was sleeping. When he picked her up, he noticed she was not breathing. He tried to 'give her breaths' and then told Adontay to call 9–1–1."

*O'Quinn*, 791 N.E. 2d at 1070.

Petitioner did not testify at trial, and the defense presented no evidence.

*O'Quinn*, 791 N.E. 2d at 1071.

## **Appeal and Postconviction Petition**

On direct appeal, O'Quinn raised the following points:

1.   He was denied effective assistance of counsel and his speedy trial rights were violated by counsel's repeated motions to continue his trial.

2.   He was denied a fair trial when the court ordered him removed from the courtroom after he created a disturbance.

3.    The submission of a special interrogatory to determine the victim's age violated the doctrine of separation of powers and was an *ex post facto* application of law.

4.    He was denied a fair trial by the court's failure to make a sufficient inquiry into his claims that defense counsel was not providing adequate representation and by failing to appoint new counsel to represent him at the hearing on his post-trial motion.

5.    Trial counsel was ineffective in filing a *pro forma* motion to reduce his sentence on the day of sentencing.

See, Doc. 18, Ex. A, Brief on Direct Appeal.

Petitioner filed a pro se postconviction petition which raised a number of issues.  Counsel was appointed to represent him, but counsel did not file an amended petition.  On appeal from the dismissal of the motion, counsel filed a brief which raised only one issue, that the postconviction petition made a substantial showing that O'Quinn was denied due process and an impartial jury because a juror told O'Quinn that "he was going down" before closing arguments. Doc. 18, Ex. F.

O'Quinn filed a pro se motion for leave to file a *pro se* supplemental brief in the appeal from the dismissal of his postconviction petition.  See, Doc. 1, Ex. 2, p. 30-31.  The Appellate Court denied the *pro se* motion.

The Appellate Court affirmed the dismissal of his petition without an evidentiary hearing.  See, Doc. 18, Ex. I.  Petitioner then filed a *pro se* PLA, raising only the following issues:

1.    The postconviction petition made a substantial showing that O'Quinn was denied due process and an impartial jury because a juror told O'Quinn that "he was going down" before closing arguments.

2.   Counsel on appeal from the denial of his postconviction petition was ineffective for failing to adequately raise the ineffectiveness of postconviction petition counsel.

3.   Counsel on appeal from the denial of his postconviction petition was ineffective for failing to adequately raise the issue that his constitutional rights were violated by the presentation of perjured testimony to the grand jury.

4.   O'Quinn's *Miranda* rights were violated, and counsel on appeal from the denial of his postconviction petition was ineffective for failing to adequately raise the issue.

5.   The five issues that were raised in O'Quinn's *pro se* motion to supplement counsel's brief, which had been denied by the Appellate Court.

Doc. 18, Ex. J.

O'Quinn filed a motion for leave to supplement his PLA.  See, Doc. 1. Ex. 2, pp. 1-21.  The Supreme Court denied that motion, and denied his PLA.  Doc. 18, Ex. K & L.

## Law Applicable §2254 Petition

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act, known as the AEDPA.  "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 122 S.Ct. 1843, 1849 (2002).

Habeas is *not* yet another round of appellate review.   28 U.S.C. §2254(d) restricts habeas relief to cases wherein the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of,

clearly established federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

A judgment is "contrary to" Supreme Court precedent if the state court "contradicts the governing law set forth in [Supreme Court] cases. " *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir. 2012), citing *Williams v. Taylor*, 120 S. Ct. 1495, (2000).   A state court decision is an "unreasonable application of" clearly established law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*   The scope of federal review of state court decisions on habeas is "strictly limited" by 28 U.S.C. § 2254(d)(1).   *Jackson v. Frank*, 348 F.3d 658, 661 (7th Cir. 2003).  The unreasonable application standard is "a difficult standard to meet." *Id.*, at 662.   Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, the state court application must be "something like lying well outside the boundaries of permissible differences of opinion." *Id.*, at 662 (internal citation omitted).

### Timeliness, Exhaustion and Procedural Default

Respondent concedes that the petition was timely filed and that petitioner has exhausted state remedies.  He contends that some of petitioner's grounds are procedurally defaulted.

A habeas petitioner must clear two procedural hurdles before the Court may reach the merits of his habeas corpus petition: exhaustion of remedies and

procedural default. *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995). Before seeking habeas relief, a petitioner is required to bring his claim(s) through "one complete round of the State's established appellate review process" because "the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728 (1999), see also 28 U.S.C. §2254(c).   Under the Illinois two-tiered appeals process, petitioners such as O'Quinn must fully present their claims not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review in cases such as this one. *Id.* at 843-846.

<u>**Analysis**</u>

**1.     Noncognizable Claims**

Petitioner is entitled to habeas relief only if he can demonstrate that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a).   Therefore, ground 5, that the trial court erred in failing to address his claim of actual innocence on his postconviction petition, and ground 6, regarding the *pro se* brief he attempted to file, are not cognizable.   Because there is no constitutional right to state collateral proceedings, any error in such proceedings cannot be the basis for habeas relief unless the error violates an independent constitutional right.   *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (1996).  A party who is represented by counsel has no constitutional right to file a *pro se* pleading.   *U.S. v. Patterson*, 576 F.3d 432, 436-437 (7th Cir. 2009).

Further, to the extent that O'Quinn is attempting to raise a claim of actual innocence, that claim is not cognizable because a freestanding claim of actual innocence does not constitute grounds for habeas relief. *Herrera v. Collins*, 113 S. Ct. 853, 860-861 (1992).

In addition, grounds 9 and 10, alleging ineffective assistance of counsel on postconviction proceedings, cannot be the basis for habeas relief.   28 U.S.C. §2254(i).   There is no constitutional right to effective assistance of counsel on collateral review.  See, *Pennsylvania v. Finley*, 107 S. Ct. 1990. 1993 (1987).

## 2.    **Procedurally Defaulted Claims**

A number of O'Quinn's claims are procedurally defaulted because they were not raised for one full round of state court review.  Grounds 3 (presentation of perjured testimony to grand jury), 4 (failure to advise of *Miranda* rights), 5 (trial court failed to address his claim of actual innocence), 7 (trial counsel failed to challenge the constructive amendment of the indictment, the validity of the amended indictment and the state's non-IPI instruction), and 8 (appellate counsel was ineffective) were raised only in the *pro se* brief he attempted to file in his postconviction appeal.   They were not presented to the Appellate Court in his counseled brief, and were therefore not before that court.

Petitioner has not argued that there was cause for his procedural default. Ineffective assistance of counsel can serve as cause for procedural default, but the claim of ineffective assistance must itself be exhausted.  *Richardson v. Lemke*, --- F.3d ----, 2014 WL 931112, *10-11 (7th Cir. 2014).   The only ineffective

assistance claims exhausted here were that trial counsel was ineffective in repeatedly moving to continue his trial date, and that counsel rushed to present an inadequate motion to reduce sentence.   All other claims were defaulted because they were not raised in one full round of state court proceedings.

As previously noted, ineffective assistance of counsel in postconviction proceedings cannot be the grounds for habeas relief.   However, ineffective assistance of postconviction counsel can serve as cause for failure to exhaust a claim of ineffective assistance where state procedures prohibit or make it highly unlikely that ineffective assistance can be raised on direct appeal.  *Martinez v. Ryan*, 132 S. Ct. 1309 (2012); *Trevino v. Thaler*, 133 S Ct. 1911 (2013).

*Martinez* and *Trevino* do not apply in this case.   First, it is doubtful whether *Martinez* and *Trevino* apply to Illinois defendants because Illinois allows ineffective assistance claims to be raised on direct appeal.   The Seventh Circuit has not yet addressed the precise issue, but has held that *Martinez* and *Trevino* do not apply to Wisconsin defendants because Wisconsin allows claims of ineffective assistance to be brought on direct appeal.    *Nash v. Hepp*, 740 F.3d 1075, 1079 (7th Cir. 2014).   The Wisconsin procedures described in *Nash* are similar to Illinois procedures.   See, *People v. Nash*, 797 N.E.2d 631, 637-638 (Ill. 2003), for an explanation of Illinois procedures for preserving ineffective assistance claims in post-trial motions.   The Northern District has repeatedly held that *Martinez* and *Trevino* do not apply to petitioners convicted in Illinois because Illinois procedure allows claims of ineffective assistance to be raised on direct

appeal. See, *Murphy v. Atchison*, 2013 WL 4495652, *22 (N.D. Ill. 2013) (Murphy, J.)(collecting cases).   Ultimately, this Court need not decide the issue here because this case implicates only the performance of counsel on postconviction appeal.

The *Martinez/Trevino* rule is limited to ineffective assistance in initial-review collateral proceedings, i.e., proceedings at the trial court level on the postconviction petition.   The rule does not apply to "attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review. . . ."   *Martinez*, 132 S.Ct. at 1320.   Here, O'Quinn raised his claims of trial and appellate counsel ineffectiveness in his pro se postconviction petition.   See, Doc. 1, Ex. 2, pp. 37-60.   However, his counseled brief on appeal raised only the issue that O'Quinn was denied due process and an impartial jury because a juror told O'Quinn that "he was going down" before closing arguments.   See, Doc. 18, Ex. F.   Therefore, the procedural default of the claims that trial counsel failed to challenge the state's constructive amendment of the indictment by its instructions, the state's use of a non-IPI instruction, and the validity of the amended indictment, as well as his claims that counsel on direct appeal was ineffective in failing to raise the use of perjured testimony in the grand jury and the violation of his *Miranda* rights, and in failing to properly argue the speedy trial violation, are attributable to counsel's failure to raise them on appeal.   *Martinez* and *Trevino* do not apply and the procedural default is not excused.

The Court has also considered whether O'Quinn's claim of actual innocence is sufficient to overcome his procedural default, and finds that it is not. The Supreme Court held in *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013), that "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims (here, ineffective assistance of counsel) on the merits notwithstanding the existence of a procedural bar to relief." The Supreme Court reaffirmed the *Schlup* standard for a credible showing of actual innocence, cautioning that "tenable actual-innocence gateway pleas are rare" and describing the *Schlup* standard as "demanding" and "seldom met." *McQuiggin*, 133 S. Ct. at 1928.

A credible claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. " *Schlup v. Delo*, 115 S. Ct. 851, 865 (1995). The *Schlup* standard permits habeas review of defaulted claims only in the "extraordinary case" where the petitioner has demonstrated that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 126 S. Ct. 2064, 2077 (2006).

O'Quinn's claim of actual innocence consists of (1) an argument that he was physically incapable of shaking Emmarld because his wrist was in a splint and

his back was injured, and (2) speculation that someone else, perhaps Twuna Jackson, her daughter Kiera, or his own son Adontay, killed Emmarld. He offers no evidence to support either of these points.  He has filed a doctor's report at Doc. 1, Ex. 3, pp. 9-10, which undermines his claim about his physical condition. O'Quinn was examined for a work-related injury on September 30, 1997, less than a month before the murder.  The doctor concluded that he had suffered a cerviothoracic strain.  This report in no way establishes that he was physically incapable of shaking a thirteen month old baby.

**3.      Independent and Adequate State Law Ground**

In ground 2 of his habeas petition, O'Quinn argues that he made a substantial showing in his postconviction petition that he was denied an impartial jury.  The Appellate Court rejected his claim, holding that the claim was forfeited because petitioner could have raised the issue of juror bias on direct appeal, but failed to do so.  Doc. 18, Ex. I, pp. 7-8.

Under Illinois law, claims that could have been raised on direct appeal, but were not, are forfeited and cannot be brought in a postconviction petition.  *People v. Pitsonbarger*, 793 N.E.2d 609, 619 (Ill. 2002).  Thus, the state court rejected his claim on an independent and adequate state law ground, which bars review here unless petitioner has demonstrated cause and prejudice.  *Smith v. Gaetz*, 565 F.3d 346, 351 (7th Cir. 2009).  For the reasons discussed above, petitioner has not shown cause for his failure to properly present this claim.

**4.      Merits of non-defaulted claims**

Petitioner properly preserved only three claims. First, he argues that his speedy trial rights were violated. Secondly, he argues that trial counsel was ineffective in repeatedly moving to continue the trial date and in "rushing" to prepare and present a motion to reduce sentence on the day of sentencing. Lastly, he argues that his due process rights were violated by the submission of a special interrogatory which asked the jury to find the victim's age.

On habeas review, the federal court assesses the decision of the last state court to rule on the merits of the claim. *Simpson v. Battaglia*, 458 F.3d 585, 592 (7th Cir. 2006). Here, that is the decision of the Illinois Appellate Court affirming the dismissal of the postconviction petition, located at Doc. 16, Ex. M. A portion of that opinion was nonpublishable under Ill. S. Ct. Rule 23. The unpublished text can be found at *People v. O'Quinn*, 274 Ill. Dec. 655, 668 (Ill. App. 5th Dist., 2003).

The Appellate Court held that O'Quinn's Sixth Amendment right to a speedy trial was not violated. Justice Kuehn dissented. With regard to the speedy trial claim, the state court correctly identified *Barker v. Wingo*, 92 S. Ct. 2182 (1972) as the applicable Supreme Court precedent. In *Barker*, the Supreme Court held that four factors must be considered in weighing a Sixth Amendment speedy trial claim: length of delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and the prejudice suffered by defendant by reason of the delay. *Barker*, 92 S. Ct. at 2912. The state court also cited *People v. Crane*, 743 N.E.2d 42 (2001), which, in turn, relies on *Doggett v. United States*, 112 S. Ct.

2686 (1992).  In *Doggett*, the Supreme Court applied the *Barker* factors, noting
that the *Barker* inquiry is triggered by a delay that is "presumptively prejudicial."
*Doggett*, 112 S. Ct. at 2690-2691.

The Appellate Court correctly held that the three and one-half year delay in
bringing O'Quinn to trial was presumptively prejudicial, and so proceeded to the
*Barker* analysis.   The court first noted that the entire period of delay was
attributed to O'Quinn because every continuance had been at the request of
defense counsel.   The court cited *Barker* for the proposition that "Delay is not an
uncommon defense tactic."   *O'Quinn*, 791 N.E. at 1072, citing *Barker*, 92 S. Ct. at
2187. The court observed that defense counsel was able to extract a favorable plea
offer from the state, which may have been offered because the state "believed that
the delay in bringing defendant to trial negatively affected its chances of a
successful prosecution."   *O'Quinn*, *Id.*   With regard to the third *Barker* factor,
Appellate court found that O'Quinn asserted his right to a speedy trial.   The court
then considered whether the delay prejudiced petitioner:

> Although it can be argued that defendant spent a lengthy amount of time in
> prison, resulting in unnecessary anxiety and concern, defendant cannot
> show that this length of time caused his defense to be impaired. Defendant
> claims that prejudice is demonstrated by the fact that one of the witnesses
> he wanted to call, his estranged wife, had died by the time he was finally
> brought to trial. We note, based on the record before us, that defense
> counsel had investigated the possibility of calling the wife and had decided
> that her testimony would not have been useful even if she had been an
> available witness and instead could have served to hurt defendant's case.
> This point is further evidenced by defense counsel's filing of a motion in
> limine to exclude evidence that defendant had been investigated for abusing
> his wife's children. Based on this filing, defense counsel's statements, and
> the fact that he was living with another woman when the murder occurred,
> we conclude that defendant was not prejudiced by being unable to call his

estranged wife as a witness.

Defendant also attempts to argue that because counsel failed to subpoena medical and telephone records, this evidence may have been lost or destroyed by the time of the trial. Defendant offers no explanation of how this would have helped his defense and is therefore unable to make the showing of prejudice required by this prong of Barker.

*O'Quinn*, 791 N.E.2d at 1073.

Petitioner has not demonstrated that the majority opinion's analysis is an unreasonable application of Supreme Court precedent. He argues that he wanted a speedy trial and did not agree with his attorney's repeated requests for continuances. However, it is well-established that delay caused by defense counsel is charged to the defendant, even where counsel is assigned and the defendant does not agree with the requests for continuances. *Vermont v. Brillon*, 129 S. Ct. 1283 (2009). He also argues that the state court was incorrect in finding that he was not prejudiced by the delay. He argues that he was prejudiced because his ex-wife died before trial and the delay caused his attorney to be unable to subpoena medical and telephone records. The state court reasonably found that inability to call his ex-wife as a witness did not prejudice petitioner. Defense counsel had determined that his ex-wife's testimony would likely hurt his case because petitioner had been investigated for abusing his wife's children. *O'Quinn*, 791 N.E.2 at 1073. And, the state court found that he offered no explanation for why medical and telephone records would have helped his defense. *Ibid.*

This Court concludes that the Appellate Court's majority decision on

petitioner's speedy trial claim was not an unreasonable application of Supreme Court law.  The trial court's weighing of the *Barker* factors was reasonable.  See, *Yarbrough v. Alvarado*, 124 S. Ct. 2140, 2149 (2004), observing that courts have "more leeway" in applying general rules requiring the weighing of several factors.

This Court also concludes that the state court reasonably rejected petitioner's ineffective assistance of counsel claim.  A claim of ineffective assistance of counsel must be analyzed under *Strickland v. Washington*, 104 S.Ct. 2052 (1984).  Analysis under *Strickland* and on habeas review under § 2254 are both highly deferential.  Where, as here, both apply, the review is "doubly" deferential.  *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011).

In order to show ineffective assistance of counsel under *Strickland*, a petitioner must demonstrate (1) that counsel's performance "fell below an objective standard of reasonableness" ("the performance prong"), and (2) "that the deficient performance prejudiced the defense" ("the prejudice prong").  *Strickland*, 104 S. Ct. 2066-2067.  In order to be entitled to habeas relief, the petitioner must satisfy both prongs of the *Strickland* analysis.  However, there is no mandatory order for the analysis, and a habeas court is not required to address both prongs if the petitioner has failed to make a sufficient showing on one.  *Id.* at 2069.

Under *Strickland's* performance prong, a court enquires into "the objective reasonableness of counsel's performance."   *Harrington*, 131 S.Ct. at 790.  "*Strickland* does not guarantee perfect representation, only a 'reasonably

competent attorney.'" *Id.* at 791**.**     There is a strong presumption of adequate assistance and the exercise of reasonable professional judgment to avoid the temptation to second-guess counsel's assistance.    *Id.* at 789.    Indeed, a petitioner's right to effective assistance of counsel is violated only when counsel's conduct, in light of all the circumstances, "[was] outside the wide range of professionally competent assistance." *Strickland,* 104 S. Ct. at 2066.

With respect to prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 104 S. Ct. at 2068.    "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S. Ct. at 792.    Ultimately, "[t]he focus of the *Strickland* test for prejudice … is not simply whether the outcome would have been different; rather, counsel's shortcomings must render the proceeding fundamentally unfair or unreliable." *Gray v. Hardy*, 598 F.3d 324, 331 (7th Cir. 2010).

The state court correctly identified *Strickland* as the applicable Supreme Court precedent regarding claims of ineffective assistance, and recognized that the *Strickland* two-pronged test requires a showing of both deficient performance by counsel and resulting prejudice.    *O'Quinn*, 791 N.E.2d at 1074.    The state court held that counsel was not ineffective in requesting continuances of the trial date because the delay did not prejudice petitioner.    *Ibid*.    Contrary to petitioner's

apparent belief, counsel is not required to obtain the client's consent "prior to making purely tactical decisions such as the decision to seek a continuance." *United States v. Gearhart*, 576 F. 3d 459, 463, n.3 (7th Cir. 2009).

The state court also considered whether counsel rendered ineffective assistance concerning the post-trial motion.   In the unpublished section of its opinion, the court stated:

> Defense counsel argued competently that the method used to impose an extended-term sentence was improper under *Apprendi*, that the court gave undue weight to factors in aggravation, and that the court failed to give full weight to defendant's rehabilitative potential in light of his lack of a prior criminal history. Counsel concluded by asking the court to modify defendant's sentence to something less than 70 years' imprisonment.
>
> Additionally, defendant's absence from the hearing did not deprive him of the ability to present his contentions of error or present arguments on his own. Defendant does not claim that any facts existed outside of the record which would have been argued at the motion hearing, nor does he claim that he would have raised issues that would have required an evidentiary hearing. Defendant does not raise any additional arguments related to the propriety of his sentence or contend that there were issues that were not presented during the motion hearing. Based on this, we find that defense counsel's actions were reasonable and that defendant is unable to show that there is a reasonable probability the outcome of the hearing would have been different had counsel waited to file the motion at a later time or had ensured that defendant was present at the hearing on the motion.

*O'Quinn*, 274 Ill. Dec. at 668.

The state court reasonably applied *Strickland* in concluding that petitioner failed to demonstrate prejudice because he failed to identify any issue omitted from the motion by counsel.   Petitioner now suggests that counsel should have raised issues such as the "constructive amendment" of the indictment and the use of a non-IPI instruction.   However, as was explained above, these claims of

ineffective assistance are procedurally defaulted.  A habeas petitioner is required to present both the facts and the law on which he relies, and "failure to alert the state court to a complaint about one aspect of counsel's assistance will lead to a procedural default." *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007).

Lastly, the state court considered whether the submission of a special interrogatory requiring the jury to find the victim's age violated due process or was an *ex post facto* application of law.

Petitioner was sentenced to an extended term of 70 years imprisonment based on the aggravating factor that the victim was under the age of 12.  The majority decision noted that "The elements of first-degree murder do not include age as a factor. 720 ILCS 5/9–1(a)(1) (West 1996). Age, however, was and is a factor in aggravation to be determined by the court at sentencing as a reason to impose an extended-term sentence. 730 ILCS 5/5–5–3.2(b)(4)(i) (West 1996)." *O'Quinn*, 791 N.E.2d at 1075.  The court explained that, at the time of Emmarld's murder, the statute did not require a jury finding as to the victim's age.  Following the Supreme Court's decision in *Apprendi v. New Jersey*, 120 S. Ct. 2384 (2000), the legislature amended the statute to require that the trier of fact make a finding beyond a reasonable doubt as to the presence of an aggravating factor.   This amendment took place prior to O'Quinn's trial.  *O'Quinn*, 791 N.E.2d at 1077.

The state court correctly identified controlling Supreme Court precedent:

> An ex post facto law is one that is retrospective, affects substantial rights, and disadvantages the defendant. *Miller v. Florida*, 482 U.S. 423, 430, 107   S.Ct. 2446, 2451, 96 L.Ed.2d 351, 360 (1987). A law is considered ex post facto if it is both retroactive and more onerous than the

law in effect at the time of the offense. *Weaver v. Graham*, 450 U.S. 24, 30–31, 101 S.Ct. 960, 965, 67 L.Ed.2d 17, 24 (1981). A defendant does not, however, have a "vested right" in the modes of procedure used at his trial. *Miller*, 482 U.S. at 430, 107 S.Ct. at 2451, 96 L.Ed.2d at 360; *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344, 356 (1977); The ex post facto clause does not limit the legislature's control of remedies or modes of procedure, so long as they do not affect matters of substance.  *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925).

The majority opinion then went on to conclude that the amendment to the statute merely affected "a mode of procedure" and did not newly criminalize previously innocent behavior, alter the rules to make a conviction easier, increase the punishment for a previously committed crime, or change the elements of first degree murder.  "The only change made is that the finder of fact must determine the existence of the relevant aggravating factor beyond a reasonable doubt, thereby increasing the burden required of the State."  *O'Quinn*, 791 N.E. 2d at 1078.

The majority's conclusion that the submission of the special interrogatory did not violate due process or constitute an *ex post facto* application of law is eminently reasonable.  The law in effect at the time petitioner killed Emmarld provided for an extended term sentence where the victim was under the age of 12. The dissenting judge's view that it did not, see *O'Quinn*, 791 N.E.2d at 1079, is incorrect.  The only change in the law was that, at the time of trial, the presence of an aggravating factor had to be found by the trier of fact beyond a reasonable doubt, rather than by the sentencing judge on a lower standard of proof.  As the majority correctly noted, this change served only to increase the state's burden, and in no way violated petitioner's constitutional rights.

In sum, petitioner has not demonstrated that the state court's decision was an unreasonable application of federal law in any respect.  In fact, it was not.  It must be remembered that this is a high bar.  "It is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.'"  *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013), citing *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).   Here, the state court's decision does not demonstrate an application of federal law that is outside the boundaries of permissible differences of opinion.  *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003).   Therefore, petitioner is not entitled to habeas relief.

### Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).

In order for a certificate of appealability to issue, petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong."   See, *Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000).  Where a petition is dismissed on procedural grounds without reaching the underlying constitutional issue, the petitioner must show both that reasonable

jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, *Ibid.*

Here, no reasonable jurist would find it debatable whether this Court's rulings on procedural default were correct.

O'Quinn has not made the required showing as to the substantive constitutional issues considered by this Court. However, the two issues on which Justice Kuehn dissented require more discussion.

"When a state appellate court is divided on the merits of the constitutional question, issuance of a certificate of appealability should ordinarily be routine. A district court could deny a certificate of appealability on the issue that divided the state court only in the unlikely event that the views of the dissenting judge(s) are erroneous beyond any reasonable debate." *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011).

Justice Kuehn dissented on whether petitioner's constitutional rights were violated by imposing an enhanced sentence based on the jury's finding as to the victim's age, and by the three and one-half year delay in bringing him to trial. On the first issue, his views are "erroneous beyond any reasonable debate" because they are based on the mistaken belief that the statute in effect at the time of the murder did not provide for an extended sentence for murder of a child under the age of 12. Therefore, a certificate of appealability is denied as to that issue.

However, his views are not clearly erroneous as to whether petitioner's Sixth Amendment speedy trial rights were violated.   The Court therefore grants a certificate of appealability as to that issue only.

<u>Conclusion</u>

Chester O'Quinn's petition for habeas relief under 28 U.S.C. §2254 **(Doc. 1)** is **DENIED**.  This cause of action is **DISMISSED WITH PREJUDICE**.   The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

**Signed this 7th day of April, 2014.**

Digitally signed by
David R. Herndon
Date: 2014.04.07
12:27:33 -05'00'

**CHIEF JUDGE**
**U.S. DISTRICT COURT**